[S. F. No. 11861. In Bank.—February 6, 1929.]

BANK OF ITALY (a Corporation), Respondent, v. E. N. CADENASSO et al., Copartners, etc., Appellants.

F. J. Solinsky and Edward R. Solinsky for Appellants.

Louis Ferrari and J. J. Posner for Respondent.

THE COURT.—This cause is before us for a hearing in bank upon an order granting said hearing after decision by department one of this court.

We have given consideration to the points made by appellants in their original briefs and also in the briefs filed since said order granting a hearing in bank was made, and we are of the view that the findings of the trial court are supported by the evidence. The rule is that if there is any substantial evidence in the record by which the findings of the trial court may be sustained this court will not disturb the judgment appealed from.

While appellants have moved to vacate and set aside the judgment herein upon the ground that the judge who tried the cause was disqualified by reason of the matters set forth in said motion (*Bank of Italy* v. *E. N. Cadenasso and Mario J. Cadenasso, Copartners, etc.* (S. F. No. 11861), *post,* p. 436 [274 Pac. 534], this day filed), we are not to permit any point made upon the presentation of said motion to enter into the consideration of this appeal, which was taken from the judgment.

The department decision, Curtis, J., which we hereby adopt as our decision upon hearing in bank, sufficiently covers the case as made in the court below. Said decision follows:

"This is an action for money had and received by defendants for and on behalf of plaintiff. ▇ The trial court found in favor of the plaintiff. The evidence is conflicting. We must, therefore, accept the case as proven by the plaintiff and reject all evidence of the defendants which is in substantial conflict with that of the plaintiff. ▇ This controversy grew out of the dealings of the parties hereto with Domenico Caso. The latter had a cheese factory, which he was operating at Newman, California. On October 1, 1920, he entered into a written contract with the defendants whereby the latter agreed to advance or loan to Caso the sum of five thousand dollars. Caso was to deliver to defendants quantities of cheese, which the latter were to sell and the proceeds up to 28 cents per pound were to be applied to Caso's indebtedness to defendants, and the excess of such proceeds, if any, was to belong equally to the parties to said contract. The contract further provided that should said defendants loan to Caso any additional sums of money, that the terms and conditions applicable to said loan of $5,000 should apply to any additional sums loaned to Caso.

"The defendants at the time of the execution of this written contract advanced to Caso the sum of $3,500 under the

terms thereof, and thereafter made him additional advancements, all of which advancements or loans amounted to $15,652.17; of this amount defendants were paid the sum of $2,366.56, leaving a balance due from Caso to defendants of $13,285.61. A few days after the execution of the contract referred to above, and on October 7, 1920, Caso desired further capital in his business. He was introduced by the defendant E. N. Cadenasso to certain officers of the plaintiff and made application for and was granted a loan of $25,000. This loan was secured, in part, at least, upon a financial statement of Caso's assets and liabilities prepared by the defendant E. N. Cadenasso, from which there was omitted from Caso's liabilities the indebtedness due defendants, nor was there any reference in said statement made to the written contract between Caso and defendants. Representations were made at the time of securing this loan from the plaintiff of the amount of cheese then owned by Caso and in the possession of the defendants, and there was evidence to the effect that said loan was made on the strength of the representation that Caso was the owner of said cheese. Caso testified that the loan was made on the cheese. The cheese was kept in the warehouse of the defendants, and the officers of the plaintiff made frequent trips to the said warehouse for the purpose of inspecting the cheese, and were admitted by the defendants, who pointed out the cheese to said officers, but on the occasion of none of said visits did either of said defendants make any claim to said cheese or to any lien thereon. The parties interested were not able to sell the cheese at a price satisfactory to them and the same was kept upon defendants' premises until sold, as hereinafter set forth. On November 16, 1921, Caso made a written assignment of his interest in the cheese to the plaintiff bank, of which the following is a copy:

" 'November 16, 1921.

" 'E. N. Cadenasso & Company.

" 'Gentlemen: Please take notice that I have assigned to the Bank of Italy all my right, title and interest in and to that certain block of cheese, approximately 150,000 pounds, held by you for the purpose of sale for my account and you are hereby directed to hold the same and all proceeds thereof subject to the order of the said Bank of Italy.

" 'Yours truly,

" 'D. CASO.'

"On the same day the defendants wrote and signed a written acceptance of said order as follows: 'Accepted, November 16, 1921. E. N. Cadenasso & Company, by E. N. Cadenasso.' In April, 1922, Caso made and delivered to the plaintiff a bill of sale to all of said cheese. It was not until after this bill of sale was delivered to the bank that the defendants notified the officers of the bank that they (the defendants) claimed a lien upon the cheese, under the written agreement of October 1, 1920, and that their lien was prior in time and superior to the claim of the bank. Thereafter the defendants sold the cheese in different lots and at different times, and during the next few months immediately following the delivery of said bill of sale. On receiving the proceeds of said several sales the defendants deducted the expense of making said sale and the balance remaining was divided by defendants between themselves and the bank, by retaining for themselves 32 per cent of said net proceeds and remitting to the bank 68 per cent of said net proceeds. The cheese sold for a total amount of $13,181.15. After deducting the expenses of sale there was left a balance of $10,778.37. Of this amount the defendants remitted to the plaintiff $6,662.77 and retained for themselves the sum of $4,115.60. This action was brought to recover said sum of $4,115.60 from defendants. Defendants in their answer denied any indebtedness to plaintiff. They also interposed a cross-complaint by which they sought to recover back said sum of $6,662.77 paid by them to plaintiff as aforesaid. The trial court rendered judgment in favor of plaintiff for the amount demanded in its complaint and denied defendants any relief whatever under their cross-complaint. From this judgment the defendants have appealed. Of the sum of $25,000 borrowed of plaintiff by Caso on October 7, 1920, $5,000 had been paid, leaving of the principal $20,000 unpaid. This amount was still unpaid until up to the time defendants began selling said cheese and making remittances thereon to plaintiff. As we have already seen, the amount due defendants from Caso was $13,285.61, and this amount was unpaid at the time the defendants began the sale of said cheese. The indebtedness of Caso to plaintiff had not been reduced at the time of the trial except as to the amounts plaintiff had received thereon from defendants, and Caso's indebtedness to defendants at the time of the trial was said

sum of $13,285.61, less the amounts defendants had received on the sale of said cheese, as just stated. The division of the proceeds of the sale of said cheese was made by defendants between themselves and plaintiff substantially in the proportion that their respective claims bore to the aggregate amount of said indebtedness. The defendants claimed, and defendant E. N. Cadenasso testified, that this was done under an agreement between himself and plaintiff, and that defendants had assented to said agreement and division of the proceeds of said sale 'in order to keep peace and not force Caso into bankruptcy.' This evidence of defendants is contradicted by the testimony of the officers of the bank and by certain correspondence admitted in evidence. The trial court found against this claim of defendants and its finding thereon must be accepted by this court.

"The defendants base their claim to the money involved herein upon the terms of the written agreement, of date October 1, 1920, entered into by them with Caso. They insist that by the terms of this agreement they were given a lien upon all cheese delivered into their possession by Caso under said agreement to the extent of any and all unpaid indebtedness of Caso to them. As we view the case, however, it is not necessary to pass upon this question. Conceding that defendants were given such a lien, it is the contention of plaintiff that the defendants are estopped by their subsequent action from asserting said claim of lien as against the claims of the plaintiff. This contention of plaintiff, we think, must be sustained. The evidence on behalf of plaintiff, which, in view of the findings of the trial court in plaintiff's favor, we must accept, shows that it was through and by means of the efforts of defendant E. N. Cadenasso that plaintiff loaned to Caso the sum of $25,000, and that this loan was made to Caso by reason of the fact that he was the owner of this large quantity of cheese. To put it in the words of Caso, 'the loan was made on the cheese.' While E. N. Cadenasso was assisting in making these arrangements which resulted in the bank parting with this large sum of money upon the strength of Caso's ownership of this cheese, he did not at any time, by word or action, intimate that he or his firm had a lien upon this same property to secure a large present and a much larger prospective indebtedness, which, as later developments showed, exceeded the proceeds

finally derived from the sale of the cheese. To now permit him, or his firm, to assert that they held a secret lien against a large part of the property which they represented Caso was the owner of, and which was the inducing cause of the bank making Caso the loan, would be to countenance a fraud against the bank of the rankest kind. The conclusion is irresistible from uncontradicted evidence that had Cadenasso disclosed to the bank at the time he and Caso applied for the loan that his firm held a written agreement of Caso giving them a first lien upon all cheese belonging to Caso as security for such sums of money as they had already loaned him or might loan him in the future, the bank would not have acceded to their request for a loan, nor would it have loaned Caso any money whatever. The facts bring the case clearly within the rules of estoppel, so clearly that a citation of authorities is unnecessary. The weakness of defendants' position is further borne out by the subsequent agreement to pay to the bank 62 per cent of the net proceeds of the cheese. If their written agreement with Caso gave them a first lien against the cheese in their possession, then they would have been entitled to the full amount of said proceeds to the extent of all loans made by them to Caso. By paying to the bank 62 per cent of these proceeds and only reserving to themselves 38 per cent, which was entirely inadequate to meet the amount of their claim against Caso, they showed how fully they recognized the insecurity of their claim. This payment was made voluntarily and after the repeated assertions by the officers of the bank that they accepted the same without prejudice on the part of the bank to recover the full amount of said net proceeds. Their only asserted¹ reason for voluntarily turning over to the bank 62 per cent of the money, which, if their claim was correct, belonged wholly to them, was 'to keep peace and not force Caso into bankruptcy.' This reason seems not to have impressed the trial court, and accordingly it can have no weight in an appeal from the judgment of that court.

"The defendants contend that Caso was well acquainted with the officials of the plaintiff at the time he secured the loan from them on October 7, 1920, and that he was indebted to said bank in a large sum of money. This is partially but not wholly true. The evidence shows that plaintiff had a branch bank at Modesto, California, and that in May,

1920, Caso had borrowed $5,600 from this branch bank to take care of an unsecured indebtedness at the home office, and that this loan was later increased to $10,000, which was paid in August, 1920. While this evidence does show that Caso had an acquaintance with 'the home office,' it does not in any manner overcome the evidence that E. N. Cadenasso went with Caso at the time the latter secured the loan of $25,000, and that the loan was made upon the representations of Caso and Cadenasso that Caso owned this large quantity of cheese, which made him a safe risk for the bank, and that E. N. Cadenasso at no time during the negotiations leading up to the making of the loan informed the bank of his claim of lien against the cheese.

"Much of the briefs of the parties is devoted to a discussion of the legal effect of the written agreement, of date October 1, 1920, between Caso and the defendants. The defendants claim that by the terms of this agreement they were given a first lien upon all cheese delivered into their possession under said agreement by Caso, while the plaintiff denies that the agreement is susceptible of any such construction, and contends that the effect of such agreement was to make Caso and Cadenasso copartners in the disposition and sale of said cheese. Plaintiff further contends that as they were copartners in said business, the money loaned by plaintiff was loaned to such copartnership for the purpose of carrying on said business, even though the note was signed by Caso only. Under this contention the plaintiff claims that the defendants were personally liable for the amount of said loan as members of said partnership. As already suggested, we consider it unnecessary to pass upon these various and conflicting contentions of the parties to this action. We are satisfied that even if the defendants are right in the construction which they place upon said written agreement, they are estopped from claiming any lien under said written agreement by their subsequent actions, which resulted in the plaintiff loaning to Caso said sum of $25,000 under the circumstances already related. Therefore, the legal effect of said written agreement, as between the parties thereto, becomes of no material . consequence in determining the rights of the parties in this action under the facts as above set forth.

"The plaintiff, having succeeded to all rights of Caso in and to the cheese in the possession of the defendants, was

entitled to the proceeds thereof after the same was sold by defendants. These facts proven at the trial were sufficient to sustain the findings of the court in favor of the plaintiff."

.Upon the grounds set forth in the foregoing opinion the judgment is affirmed.