[Civ. No. 2181.   Fourth Appellate District.—November 14, 1938.]

ALBERT J. COX, as Executor, etc., Respondent, v. LILLY M. KLATTE, Appellant; CLARA M. BIEL, Intervener and Appellant.

William Ellis Lady for Appellant.

H. O. Harrawood and Mark Watterson for Intervener and Appellant.

Wilson & Coughlin for Respondent.

GRIFFIN, J.—The factual background, fairly characterized from the disputatious versions of the evidence as depicted in the transcript and briefs filed in the above-entitled action, discloses that Francina E. Biel, as grantee, during the year 1920, received as her separate property certain real property in the city of Redlands, of the probable value of $6,000. In the year 1929, Henry Biel, her husband, died, leaving as his heirs his widow and his two sisters, one of the latter being Miss Clara M. Biel, intervener and appellant, hereinafter referred to as "intervener". Subsequent to the death of her husband Francina E. Biel, hereinafter referred to as "respondent", had in her home as guests, numerous women friends, including the intervener and Mrs. Lilly M. Klatte, a niece, hereinafter referred to as "appellant".

Intervener lived with respondent as her companion intermittently since the death of respondent's husband and had been with her constantly from August, 1933, until the latter part of December, 1933. On the 16th day of September, 1933, respondent conveyed the above-mentioned property to Genevra Mae Potter of Redlands, who, on the same day, conveyed the identical parcel of real property to respondent Francina E. Biel and Clara M. Biel, intervener, as joint tenants, with right of survivorship. Genevra Mae Potter merely acted as a holder of title in order to effect the change desired. Respondent testified that she gave her this one-half interest in the property on condition that intervener remain with her until respondent's death. In January, 1934, after intervener left the home of respondent, respondent contacted appellant Lilly M. Klatte, asking her to come from Los Angeles, where she was then residing, to Redlands and live with respondent in her home, which she did after considerable solicitation.

After a consultation with the present attorney for appellant Lilly M. Klatte, negotiations were effected to secure a deed of the said property from Clara M. Biel and Francina E. Biel, as joint tenants, to Amber Morrison, a single woman, who had title only for the purpose of effecting the desired transfer, and who in turn conveyed the property to respondent Francina E. Biel and Lilly M. Klatte, as joint tenants with right of survivorship. Respondent also testified that she transferred this same interest in the property to her on condition that appellant remain with her until respondent "passed out".

Considerable testimony was received in evidence concerning certain alleged false promises that were claimed to have been made to respondent by both appellant and intervener, without intention to perform them, for the purpose of securing the joint interests indicated above. This testimony was equally refuted by the appellant and intervener and will be summarized and discussed later in this opinion.

On July 26, 1934, Francina E. Biel, as plaintiff, instituted an action against Lilly M. Klatte, defendant. In one count she sought to annul and cancel a deed dated January 31, 1934, from Amber Morrison to respondent and appellant as joint tenants, and in a second count sought to have the title quieted as against the appellant under the ordinary count to quiet title. The first count of the complaint was amended, enlarging somewhat on the grounds for cancellation. An amended complaint in one count was filed March 9, 1935, containing in general all of the allegations of the two counts above mentioned. An amendment to the amended complaint was filed January 21, 1936. Demurrers were interposed and an answer was filed by the appellant. On March 11, 1936, the trial of the case was commenced. No complaint in intervention had been filed up to that time. After two days of trial, the case was continued in order to take the deposition of the appellant. On March 18, 1936, Francina E. Biel died testate, leaving a will in which Albert J. Cox was appointed executor, and with his wife, made the principal beneficiaries under the will. Albert J. Cox was substituted by an order of the court as party plaintiff in the action. On April 25, 1936, the intervener, through her attorney, requested and was granted leave to file a complaint in intervention setting out her interest and to bring in new parties.

Respondent, in her amended complaint, alleges generally that on the 31st day of January, 1934, she was a widow of the age of 77 years, in poor health, was living and for some time prior thereto had been living alone in her home and in need of the society and protection of a companion; that a short time prior to said date respondent offered and proposed to appellant that if appellant, during the remainder of respondent's lifetime, would live with her in said home and be a companion to respondent and afford her the pleasure and enjoyment of her society, etc., respondent would convey and/or cause to be conveyed to respondent and appellant as joint tenants, her property, and would furnish appellant with a home therein, food, and other reasonable living expenses as long as respondent might live; that appellant, immediately prior to January 31, 1934, accepted respondent's offer and promised and agreed with respondent, in and for the considerations alleged, that she would, during the remainder of respondent's lifetime, live with her, etc.; that in pursuance of said agreement and in reliance upon the aforesaid promises of appellant, respondent conveyed and caused said property to be conveyed to respondent and appellant as joint tenants, and in reliance thereon respondent paid the appellant $600; that appellant did not give, nor did respondent receive any consideration for said conveyance; that subsequently, appellant took up her abode with respondent in her home and continued to live with her until July 12, 1934, when appellant left and abandoned respondent's home, and refused to live with her; that the consent of the respondent to the agreement was obtained by the appellant by and through means of fraud, in that appellant made the promises aforesaid without any intent of performing them; that respondent rescinded the agreement, notified appellant, and demanded that appellant reconvey her interest in the property. Therefore respondent prayed for a decree of court (1) adjudging said agreement and conveyance rescinded and cancelled, and (2) adjudging respondent the owner in fee simple of the property, and that appellant had no right, title or interest in the property. The appellant answered and denied generally the allegations of the amended complaint.

The amended complaint in intervention filed by Clara M. Biel alleges generally that on or about the 16th day of Sep-

tember, 1933, Genevra Mae Potter conveyed to Francina E. Biel and Clara M. Biel, as joint tenants, the property above described and that while the title to said property was vested in them, intervener, at the request of respondent, agreed that should respondent have an opportunity to sell the property for the benefit of respondent and intervener then and in the event of such sale, intervener would sign the deed conveying the property; that on or about the 1st day of February, 1934, Francina E. Biel, together with W. E. Lady, then counsel for respondent, visited the home of intervener and represented to her that respondent had a sale for the above-mentioned property and demanded that the intervener sign a deed of conveyance therefor; that the intervener, believing such representations and relying thereon, and believing she was to receive her share of the proceeds of such sale, signed the deed.

Intervener further claims that the deed to Amber Morrison was made without consideration and for the purpose of securing to respondent and intervener the returns and profits therefrom, but in truth and in fact Amber Morrison was the secretary of the attorney, and that the attempted conveyances were made for the purpose of deceiving this intervener and defrauding her out of the property; that she did not learn of this fraud until after the commencement of the trial of this action. Intervener prayed for a decree setting aside the deeds of conveyance signed by her and respondent and the subsequent deed executed by Amber Morrison, and any and all subsequent devices or assignments affecting the title to the property and that title be forever quieted in favor of intervener as against all parties to this action.

In the answer of Lilly M. Klatte to the amended complaint in intervention, it is alleged that prior to September 16, 1933, Francina E. Biel was living alone and sought the companionship of some particular person; that thereupon said Francina E. Biel proposed to Clara M. Biel, intervener, that if she would come and live with Francina E. Biel and be a companion to her during the balance of the lifetime of Francina E. Biel, she would cause the above-described property to be vested in Francina E. Biel and Clara M. Biel, as joint tenants, with right of survivorship; that Clara M. Biel accepted the proposal and thereupon Francina E. Biel executed and delivered to Genevra Mae Potter a deed of conveyance

dated September 16, 1933, as above described; that there was no consideration paid for said conveyance; that said grantee, on the same day, without consideration, executed a conveyance to Francina E. Biel and Clara M. Biel, as joint tenants, as above described; that upon the delivery of the conveyances, Clara M. Biel went to the home of Francina E. Biel for the purpose of living there and being a companion to Francina E. Biel during the balance of her life; that intervener continued to reside on the premises with her until December, 1933, when she left, vacated and abandoned the home and thereafter ceased to be a companion to her; that about September 16, 1933, Francina E. Biel fully compensated Clara M. Biel for any and all services rendered by her by transferring to her shares of the capital stock of the Southern California Edison Company, of the fair market value of $500. It is further alleged that there was no fraud or deception practiced in securing the signature of Clara M. Biel to the deed conveying title to Amber Morrison and thence to Francina E. Biel and Lilly M. Klatte, as joint tenants, and also that there was a failure of consideration for the conveyances from Francina E. Biel to Genevra Mae Potter and from her to Francina E. Biel and Clara M. Biel, as joint tenants, in this, that said Clara M. Biel did not do and perform the matters and things she agreed to do and perform.

The appellant further alleged that Clara M. Biel never at any time during the lifetime of Francina E. Biel, claimed or asserted any actual constructive or other interest in or to the property or proceeds of any purported sale, notwithstanding she knew of all the facts related; and therefore appellant prayed that title be quieted in her.

Albert J. Cox, as executor, filed an answer to the complaint in intervention, denying generally that Francina E. Biel conveyed or intended to convey to Clara M. Biel any right, title or interest in or to the real property, and prayed for judgment decreeing (a) that Francina E. Biel, at the time of her death was the owner of the described property; and (b) that neither the intervener, Clara M. Biel, nor the appellant, Lilly M. Klatte, has any right, title or interest in or to said property.

Upon these pleadings as thus framed and stated, the court took evidence and found generally that Francina E. Biel, believing that the appellant, Lilly M. Klatte, intended to keep and perform her promises as related, and in reliance

thereon and solely by reason thereof and without any consideration other than said promises, caused the property to be conveyed to and vested in the respondent and appellant as joint tenants, and that had not the appellant promised respondent that during the remainder of respondent's lifetime she would live with her, etc., the respondent would not have procured the conveyance of said property to them as joint tenants. A similar finding in substance, but much more in detail than related here, is made respecting the other transactions and conveyances between intervener and appellant and the respondent herein, and as a result of these findings, the court decreed: (a) that respondent Francina E. Biel, up to the time of her death was, and said executor at all times thereafter has been and now is the owner in possession and entitled to the possession of the property; (b) that the appellant and intervener have not nor has either of them any right, title, or interest in or to said property; (c) that all conveyances to appellant of any right, title or interest in or to the property were procured by fraud practiced by appellant upon respondent and that any and all of such conveyances should be set aside and cancelled and declared to be fraudulent, null and void; and (d) that all conveyances to intervener of any right, title or interest in or to the property were procured by fraud practiced by intervener upon respondent, and that any and all of such conveyances should be set aside and cancelled and declared to be fraudulent and void.

Appellants claim that there is not sufficient "substantial evidence" to sustain the finding that the appellant Lilly M. Klatte or the intervener Clara M. Biel were guilty of fraud.

After a careful reading of the transcript on appeal and considering the evidence, we find this general trend of testimony of respondent Francina E. Biel:

"Q. You gave her (Clara M. Biel) a half interest in your home about September, 1933? A. I did. Q. You gave her that to be her own separate property and estate, did you not? A. If she remained with me until I passed out. This was the way I gave it to her. Q. And you gave her a half interest in your home if she would stay with you until your death? A. Yes, sir. Q. You did that of your own volition, did you? A. I did. Q. And because you wanted to do it? A. I wanted her to stay with me and she promised and be-

cause I felt thankful she was going to remain with me I did it on that account. Q. And you wanted her to have it? A. I wanted her to have it because she was going to stay with me. Q. You don't contend she didn't act in good faith? A. She did not act in good faith; she left me. Q. Oh, she did; but—you don't contend she wasn't acting in good faith at the time you gave her the deed? A. I wouldn't know. All I know is I gave it to her with the intention that she stay with me and until I passed out. Q. You had nothing in writing, did you with her whereby she agreed to live with you? A. No. With me, blood has always been thicker than water but I firmly believed she would stand by me. I took her at her word. Today water is too thick''.

Intervener remained with respondent about three months, during which time she obtained $500 worth of Edison Company stock ''because she was going to stay with respondent''.

After quoting just one of the many similar letters written by respondent to Mrs. Klatte, there can be no question but what she desired appellant to come and live with her.

''Redlands, Calif., March 8, 1932.
''Dear Lilly & family:
''I do want you so bad.—Now what I would like to know if you could come out Friday or Saturday and stay the balance of my time on earth with me.
''Your AUNT CINE & TIPP.''

Respondent, referring to Mrs. Klatte, testified:
''Q. (By Mr. Wilson): Where did you go to see her and have these conversations? A. She came to my home, and at her home too. I asked her, 'Will you stay with me until I pass out?' She says she would. I says, 'On just what conditions?' She said if I would put my deed in joint tenancy she would give me her right hand and word of honor she would remain with me until I passed out, or I never would have given the deed. Q. Did you have some deeds made out? A. I had the deed made out after she had promised she would remain with me. . . . Q. Well now, Mrs. Biel would you have made or caused the deed to have been made to yourself and Mrs. Klatte as joint tenants, if she had not promised to come and live with you up to the time of your death? A. Not on your life, I wouldn't have done it; that is the reason I did it, because I wanted her to remain with me.''

This general answer was repeated time and again throughout the testimony of respondent. Mrs. Lillian Doell, a wit-

ness for intervener, testified that she had a conversation with Mrs. Klatte shortly after appellant came to live with Mrs. Biel in which Mrs. Klatte stated: "Yes, I have promised to stay with her now until the end." This witness also testified as to a conversation with Mrs. Biel in which Mrs. Biel stated "that Mrs. Klatte had promised to stay with her, and that she was going to give Lil. the property, in consideration of her staying with her as long as she lived." "Q. That is the first time that Mrs. Biel made the statement? A. Well, the first time she told me there was no one there but Mrs. Biel and I; but she said it afterwards when Mrs. Klatte was there; she mentioned it in Mrs. Klatte's presence also, later."

On the cross-examination of respondent she did evidence what appears to be a pronounced loss of memory, for her answers to many of the questions propounded were: "I don't remember" or "I declare I don't remember."

Counsel for appellant seems to receive much comfort in the following evidence wherein Francina E. Biel was shown a communication in her own handwriting and signed by her in the name of Mrs. Henry Biel (that being the name of her husband, who died in 1929), (both Mr. and Mrs. Biel were Spiritualists), which reads as follows:

"Redlands, Calif. Jan. 29, 34.

"Mr. W. E. Lady,

"Dear Sir:

"Please find enclosed Deed. My husband and I wish you to put my name Francina E. Biel and my niece, Mrs. Lilly M. Klatte in the last deed as joint tenants. Let the last deed be that way and oblige me. Will be in Wednesday A. M.

"Would you please write out my will giving everything I have to my niece, Lilly M. Klatte. All I have is my home and furniture and some money in bank. I will sign it Wednesday.

"MRS. HENRY BIEL."

She was then asked if she recognized the communication and she gave the following answer: "It may be mine, but it don't appear to be my handwriting—that is not my handwriting—I can swear to that—." After the death of respondent her counsel stipulated that this document was in the handwriting of Francina E. Biel.

We must agree with counsel that this is a most satisfactory method of impeachment and had the trial court so determined and found that it was impeachment as to a material issue,

and had that court disregarded the testimony of respondent by reason thereof, there would be merit in sustaining the trial court's decision, but the trial court did not so hold. We quote from a statement of the trial judge: "However, this incident has nothing to do with the question as to whether Mrs. Klatte was to stay with Mrs. Biel until her death——. While there are many inconsistent statements in Mrs. Biel's testimony, yet we must consider the whole of it and the circumstances surrounding the transaction in arriving at the true situation."

Considerable evidence was produced by appellant that would justify the court in holding that the transactions in reference to the conveyances were free from fraud. However, the court has found otherwise. The familiar rule that it is the province of the trial court to weigh the testimony and to attach to it its proper value and that the findings of the trial court are to be overthrown on appeal only when they totally lack the support of substantial evidence (sec. 1847, Code Civ. Proc.; *Dunphy* v. *Dunphy*, 161 Cal. 380 [119 Pac. 512, Ann. Cas. 1913B, 1230, 38 L. R. A. (N. S.) 818]; *Bank of Italy* v. *Zerga*, 97 Cal. App. 285 [275 Pac. 476]; *Bank of Italy* v. *Cadenasso*, 206 Cal. 428 [270 Pac. 931, 274 Pac. 536]) is conceded, but appellants contend that this evidence is not that clear, convincing and conclusive testimony that will warrant a trial court in determining from oral testimony that the conveyances described should be cancelled and set aside, and cite many authorities to support this contention. (*Kohn* v. *Parent*, 174 Cal. 570 [163 Pac. 1008]; *Mahoney* v. *Bostwick*, 96 Cal. 53 [30 Pac. 1020, 31 Am. St. Rep. 175]; *Herbert* v. *Lankershim*, 9 Cal. (2d) 409 [71 Pac. (2d) 220]; *Sheehan* v. *Sullivan*, 126 Cal. 189 [58 Pac. 543]; *Goodfellow* v. *Goodfellow*, 219 Cal. 548 [27 Pac. (2d) 898].) These cases, generally speaking, involve a determination, from oral testimony, that a deed which purports to convey land absolutely in fee simple is or was intended to be something different, such as a mortgage or a trust and were not actions to set aside a conveyance on the ground of fraud.

A deed secured by fraud is subject to cancellation. (*Lawrence* v. *Gayetty*, 78 Cal. 126 [20 Pac. 382, 12 Am. St. Rep. 29]; *Wilson* v. *Rigali & Veselich*, 138 Cal. App. 760 [33 Pac. (2d) 455]; *Henry* v. *Phillips*, 163 Cal. 135 [124 Pac. 837, Ann. Cas. 1914A, 39]; *Loud* v. *Luse*, 214 Cal. 10 [3 Pac. (2d) 542].) The making of a promise without intent to

perform it constitutes fraud (Civ. Code, sec. 1572, subd. 4; *Wilson* v. *Rigali & Veselich, supra*) and in such a case, the proof of a single fraudulent representation is sufficient to support the judgment, and without the consideration of other evidence, the subsequent failure to perform warrants the inference that appellants did not intend to perform when they promised. (*Snyder* v. *City Bond & Finance Co.*, 106 Cal. App. 745 [289 Pac. 859]; *Bouey* v. *Porterfield*, 96 Cal. App. 674 [274 Pac. 766].)

All judicial expressions concerning the necessity for clear and satisfactory proof of fraud must be construed in the light of the fundamental rule that a preponderance of evidence controls in a civil case. (*Edmonds* v. *Wilcox*, 178 Cal. 222 [172 Pac. 1101]; *Noll* v. *Baida*, 202 Cal. 98 [259 Pac. 433]; *Eade* v. *Reich*, 120 Cal. App. 32 [7 Pac. (2d) 1043].)

The question presented to the trial court was whether the actual fraud alleged had been committed. It was of course the province of the court to weigh this testimony and to attach to it its proper value. We cannot say from the record and transcript of the evidence before us that the evidence produced was not sufficiently clear, nor satisfactory, nor convincing. Therefore, the finding of the trial court on the question of the sufficiency of the evidence must prevail.

Under the issues presented by the pleadings intervener contends the court erred in sustaining an objection to the following question propounded to intervener by her counsel which she claims had a bearing on the question of consideration for the deed running to her from Mrs. Biel: "Did you and Francina Biel ever have a conversation about her property or your brother's property and the disposition of it?" Objection was made to the question and after some argument, was sustained by the court. No evidence in respect to the issue of consideration for intervener's deed was offered by any party after the above-mentioned ruling. Intervener testified in her deposition as follows: "Q. And you didn't give Mrs. Biel anything by way of money or anything else at the time she made these deeds out when the joint tenancy was created? A. No." We believe that there is sufficient evidence on which the court could base a finding that there was no consideration other than the promise above mentioned, which promise was found to be fraudulent. (*Henry* v. *Phillips, supra.*) This question might become

rightfully involved if a consideration were received for the fraudulent deed. There was no offer of proof of evidence of consideration that would enable us to determine the relevancy or materiality of the testimony. (*Whitelaw* v. *Whitelaw,* 122 Cal. App. 260 [9 Pac. (2d) 874].) We therefore cannot hold that the court committed error in sustaining the objection.

■ It is further contended that no issue of fraud as respects the deed to the intervener was raised by the pleadings. Bearing in mind the nature of the cause of action, i. e., a quiet title action, the issue of fraud may be properly raised under the pleadings as here presented. (*Henry* v. *Phillips, supra.*)

In view of the foregoing, we are of the opinion the decree of the trial court setting aside the conveyances above mentioned and quieting the title to the property therein described in respondent must be and is accordingly affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 9, 1939.